IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARK GREENE                                                                                  PLAINTIFF

V.                                    CASE NO. 4:08CV00526

LASER LINK, INC.
d/b/a National Custom Hollow
Metal originally sued as National
Doors                                                                                       DEFENDANT

## ORDER

Pending is Defendant's motion for summary judgment. (Docket # 39). Plaintiff has responded and Defendant has filed a reply. For the reasons set forth herein, Defendant's motion is granted in part and denied in part.

Facts

Plaintiff, Mark Greene, ("Greene"), who is African American, filed suit against Defendant, Laser Link, Inc. d/b/a National Custom Hollow Metal ("National") pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e, et. seq. ("Title VII") alleging that he was subjected to actionable harassment by a co-employee while employed at National and he was retaliated against for complaining of harassment.

National manufactures custom metal hollow doors and employs approximately seventeen people. Greene was hired as a grinder in 2000 and served as one of two grinders at National. Greene did not work solely as a grinder; he worked in a variety of roles and testified that National would move him as needed. In his various roles, Greene worked with different types of machinery on National's manufacturing floor, some of which were dangerous. Greene was required to wear safety equipment, including safety glasses, gloves, and steel-tipped shoes.

Greene's immediate supervisor for the last few years of his employment, Shop Foreman Eddie Gilliam, is African-American. Greene had several complaints about Gilliam, including Gilliam watching him on one project and being responsible for the death of a co-employee. Before his termination on January 14, 2008, Greene received several disciplinary write-ups and counselings.

Defendant contends that Gilliam believed that Greene should have been fired long before he was terminated. Greene disputes this fact and claims that Gilliam advised him that he did not feel that he should have been terminated. Defendant relies on several warnings that Greene received prior to his termination, including: On October 19, 2005, Greene received a three day suspension for failing to follow supervisor's instructions; issued under previous ownership of National: On June 9, 2006, Greene was sent home for talking on the cell phone; Greene denied being sent home; issued under previous ownership of National: On July 7, 2006, Greene received a written warning concerning numerous issues, including failure to treat supervisors with respect; Greene denied receiving the write-up; issued under previous ownership: On June 25, 2007, during a company meeting to announce the death of a co-worker, Greene accused his supervisor, Gilliam, of causing the employee's fatal heart attack; issued under the current ownership of National: On December 6, 2007, Greene was issued a written warning for using his cell phone on the manufacturing floor: On December 14, 2007, Greene received a written warning for insubordination after he was told to apply another coat of paint to two poles he painted on December 12, 2007; Green testified that he walked away from Shea Mathews: On December 17, 2007, Greene received a second written warning because on December 13, 2007 he clocked out and failed to return the paint supplies to their proper location: On December 17, 2007, Greene received a written warning for failure to complete a painting project; he also clocked out on this

date at noon: On January 14, 2008 Greene was terminated following behavior during a company wide meeting on January 11, 2008.  Greene acknowledged receiving some of the disciplines.  However, he often refused to sign them and claimed that his supervisor told him not to sign them.

Greene admitted that Gilliam and others talked to him about certain issues, including use of cell phones while on the factory floor and coming in late or leaving early.  No other employee at National had the number of disciplines that Greene received.  But, Greene disputes the validity and motivation for some of the write-ups, especially those received after he made a race discrimination complaint to the Defendant and threatened legal action.

Greene's EEOC charge states:

I was hired on or about February 2, 2000 as a grinder.  Between November 26, 2007 and January 14, 2008, a co-worker called me racially derogatory names.  I reported the comments to my supervisor, the accountant, the owner, and a salesman (the owner's brother).  On January 15, 2008, I was discharged.

 I was told by the owner that I was discharged because I had disrespected his brother.

I believe I was harassed because of my race black and when I reported the harassment I was discharged in retaliation, in violation of Title VII of the Civil Rights Act of 1964 as amended.

Greene claims that on November 26, 2007, a co-employee, Lance McKinney, called him a "spider monkey," but Greene does not remember the exact circumstances.  McKinney was a relatively new (October 27) temporary employee. Evan Mathews, the Vice President of Operations for National, was nearby when the statement was made, and Greene claims Mathews heard the statement, but Greene did not say anything to him immediately.  Instead, Greene complained to his supervisor, Gilliam, who is also African-American, Mike Oury, National's

Human Resources Manager, and Shea Mathews, National's Vice President of Sales and Marketing. Greene testified that he always felt he could complain to Gilliam or Oury. As a result of the complaint, National conducted an investigation. Written statements were taken from Shea Mathews, Gilliam, co-employee Curtis Thomas, and Greene. McKinney, the accused co-employee, was confronted with the allegation and told to submit his own written statement. As a result of the investigation, McKinney was counseled and a subsequent Monday Morning Meeting addressed National's policy on being respectful to co-employees.

Greene claims that McKinney called him a "welfare recipient" on January 10, 2008, about one and one-half months after his original complaint. Greene did not hear this comment by McKinney personally - it was relayed to him by other co-workers while Greene was attending Court with his son. Greene did not complain to anyone in management at National until the following day. He initially told Gilliam, who told him to write it up. While attending a January 11, 2008, company-wide meeting being run by Shea Mathews, Greene complained that McKinney had called him a "welfare recipient."

In response to Greene's comment, Defendant claims that Mathews told Greene that the meeting was not the time and place to talk about his complaint, but they could talk about it in his office after the meeting. Defendant contends that Mathews did not believe that it was appropriate to discuss Greene's new allegation about McKinney in front of all of the staff. Greene disputes the Defendant's version of events and claims that Mathews simply said he wouldn't discuss it then, it was not the time or place and it would be done behind closed doors.

Greene was angry and told Mathews "we're not going to do it behind closed doors" and that he wanted to talk about it in front of everyone because everyone involved was present.

Mathews ended the meeting and claims to have done so because "Mark was disrupting the meeting and not allowing [me] to speak without hav[ing] to address comments." Greene testified that he left the meeting and disputes that the meeting was ended because of his comments. Some employees thought Greene acted inappropriately and others did not.

Defendant claims that Greene had been disruptive and disrespectful during another company meeting when Greene accused Gilliam of being responsible for the death of a co-employee. Greene admits that he accused Gilliam of being responsible for the co-worker's death because the co-worker was not allowed to go home to grieve over the death of his brother a few months earlier. Mathews counseled Greene and placed a write-up in his file after he accused Gilliam of being responsible for the co-employee's death.

After the January 11, 2008 meeting Mathews asked Greene to discuss the new allegations against McKinney and Greene refused to do so. Mathews then reported the events of the meeting and Greene's new allegations to Oury. Oury and Mathews called Greene into a meeting that same morning to discuss the issue. Greene refused to talk about it and walked out. Later, Greene talked with Oury about it. Greene gave Oury names of individuals to interview, and testified that at least some of them "got called into the office." Greene also claims that he told management that if National did not take appropriate action, he would sue the company. Greene believed that National should terminate McKinney's employment for calling him a "welfare recipient," despite accepting McKinney's apology. Greene testified that McKinney never physically threatened him. Oury and others interviewed McKinney and the employees who witnessed McKinney's "welfare recipient" statement. National terminated McKinney on Monday, January 14, 2008, for his statements to or about Greene. Other employees were counseled for failing to report McKinney's

statements.

Defendant concluded that Greene had been insubordinate and disrespectful in violation of its policies during the January 11, 2008 meeting. Defendant claims that Greene was terminated effective January 14, 2008 as a result of his actions at the meeting on January 11, 2008 as well as his past record of behavioral and other disciplinary problems. Greene argues that he was engaging in a protected activity of making a complaint of continued racial comments by McKinney during the January 11 meeting. Greene also challenges Defendant's reliance on the alleged prior disciplinary issues which he disputes. Greene responded to his termination by filing an EEOC charge on January 18, 2008.

Defendant argues that summary judgment is warranted on all claims. Plaintiff argues that genuine issues of material fact remain which should preclude the entry of judgment as a matter of law.

### Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

<u>Discussion</u>

To establish a prima facie case of a hostile work environment, a plaintiff must show: 1) that he was a member of a protected group; 2) the occurrence of unwelcome harassment; 3) a causal nexus between the harassment and his membership in a protected group; 4) that the harassment affected a term, condition, or privilege of employment; and 5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir.2007).

Claims of hostile work environment require a high evidentiary showing that the

workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id. (quoting Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993)). *See also, Al-Zubaidy v. TEK Indust., Inc*., 406 F.3d 1030, 1039 (8th Cir.2005) (holding that lower courts must apply "demanding harassment standards" when considering hostile work environment claims); *Powell v. Yellow Book USA, Inc*., 445 F.3d 1074, 1078 (8th Cir.2006) (holding "Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight").

To determine whether an environment is sufficiently hostile or abusive the Court looks at factors including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Elmahdi v. Marriott Hotel Servs., Inc.,* 339 F.3d 645, 653 (8th Cir.2003); *Duncan v. Gen. Motors Corp.,* 300 F.3d 928, 934 (8th Cir.2002). However, Title VII does not impose "a code of workplace civility." *Woodland v. Joseph T. Ryerson & Son, Inc*., 302 F.3d 839, 843 (8th Cir. 2002). "More than a few isolated incidents are required," and the harassment must be so intimidating, offensive, or hostile that it "poisoned the work environment." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir.1999)(citations omitted).

After a thorough review of the record, construing the evidence in the light most favorable to Greene, the Court finds that Greene has failed to allege facts that, even if assumed to be true, rise to the level of creating an unreasonable interference with his work performance. Greene's complaint of two racially charges slurs made by a co-worker do not rise to the level of actionable

conduct which is severe or pervasive enough to affect a term, condition or privilege of his employment.  *See Bainbridge v. Loffredo Gardens, Inc.,* 378 F.3d 756,759-60 (8th Cir. 2004)  (A few racial slurs alone do not render a work environment hostile.) *See also, Jackson v. Flint Ink No. Am Corp*, 370 F.3d 791, 792-93, *vacated on rehearing by*, 382 F.3d 869 (8th Cir. 2004) ( in its initial holding the Court found that six instances of racially derogatory language from managers and coworkers over the course of a year and a half did not render the workplace objectively hostile, on rehearing the Court found that these comments combined with threatening conduct created a case which the Court categorized as "on the cusp of submissiblity.").  Here, Plaintiff's complaints of two derogatory comments and no threatening behavior does not support a finding of a hostile workplace.  Further, Greene does not dispute that National investigated his complaints of discriminatory comments, counseled McKinney on one occasion and terminated him on the second occasion.  The Court finds the Defendant's response to Plaintiff's complaints prompt and proper.  For these reasons, Plaintiff cannot establish a prima facie case of hostile work environment and summary judgment is proper on this claim.

In order to establish a prima facie case of retaliation, Greene must demonstrate that  he engaged in protected activity, that an adverse employment action occurred, and that there was a causal connection between the two.  *Hoffman v. Rubin*, 193 F.3d 959 (8th Cir. 1999).  Once a plaintiff has shown a prima facie case of retaliation, the burden shifts to the employer to show a legitimate, non retaliatory basis for the adverse employment action. *Phillips v. Mathews*, 547 F. 3d 905, 912 (8th Cir. 2008).  The employer's burden "is not onerous and the showing need not be made by a preponderance of the evidence." *Id*., citing *Wallace v. Sparks Health Sys*., 415 F. 3d 853, 860 (8th Cir. 2005).  The plaintiff must then present evidence "that creates an issue of fact as

to whether the asserted reason was pretext for discrimination." *Id.* "An employee's attempt to prove pretext or actual discrimination requires more substantial evidence [than it takes to make a prima facie case], however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 834 (8th Cir. 2002)(citation omitted).

It is undisputed that Plaintiff participated in a protected activity, complaining of discriminatory conduct, and that an adverse employment action occurred, he was terminated. For purposes of this analysis, the Court will assume that Plaintiff can establish a causal connection between the two. The Court finds that Defendant met its burden of demonstrating a legitimate business reason for Greene's termination: his history of disciplinary warnings pre-dating his first harassment complaint and insubordination during a company meeting. Thus, Plaintiff must present evidence that creates an issue of fact as to whether this reason is a pretext for discrimination. *See, Wilking v. County of Ramsey,* 153 F.3d 869, 874 (8th Cir. 1998) ("This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations. Specifically, the plaintiff 'must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.'")

Defendant acknowledges that Plaintiff was terminated in part based on his actions in the company meeting January 11, 2008. Defendant states that Plaintiff was terminated not for what he said, but because of the "disruptive and disrespectful manner in which he said it." It is undisputed that Plaintiff's complaint, during the meeting, was of the alleged continued

discriminatory comments by a co-employee. Because, contesting an unlawful employment practice is a protected activity, and Plaintiff was admittedly terminated in part for making his complaint known, the Court finds that an issue of fact exists as to whether the Defendant's articulated business reason for Greene's termination was in fact pretext for unlawful discrimination. The Court acknowledges that "the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace" *Kiel v. Select Artificials, Inc.*,169 F.3d 1131, 1136 (8th Cir. 1999), but because the alleged disruptive behavior occurred simultaneously with the protected activity, the Court finds a question of fact precludes the entry of summary judgment.

Wherefore, Defendant's motion for summary judgment is granted as to Plaintiff's complaint of hostile environment and denied as to Plaintiff's claims of retaliation.

IT IS SO ORDERED this 13th day of April, 2009.

                                                                                    _____
                                                                                    James M. Moody
                                                                                    United States District Judge